UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **BLAKE HYDE,** | § § § |
| Plaintiff, | § § |
| v. | § § § |
| **KIRKENDALL DWYER, LLP,** | § § § |
| Defendant. | § |

## ORIGINAL COMPLAINT

### I.   PARTIES

1. Blake Hyde ("Plaintiff") is a natural person and resident of El Paso, Texas.

2. Kirkendall Dwyer, LLP ("Defendant") is a law firm and limited liability partnership organized under the laws of Texas. It is headquartered in Dallas, Texas, and may be served with process to an officer or agent at 4343 Sigma Road, Suite 200, Dallas, Texas, 75244-4451. *See* FED. R. CIV. P. 4(e)(1), 4(h)(1)(B); TEX. R. CIV. P. 106(a).

### II.   JURISDICTION AND VENUE

3. The Court has federal-question subject matter jurisdiction over Plaintiff's Telephone Consumer Protection Act ("TCPA") claim. *See* 28 U.S.C. § 1331. The Court has supplemental subject matter jurisdiction over Plaintiff's Texas law claims as they are predicated upon the same operative facts. *See id*. § 1367(a).

4. The Court has general personal jurisdiction over Defendant because Defendant is headquartered in Texas and organized under the laws of Texas. The Court also has specific personal jurisdiction over Defendant because Plaintiff's claims arise out of Defendant's contacts with Texas, namely, telemarketing Plaintiff while Plaintiff lived in Texas.

5. Venue is proper as Defendant resides in the Northern District of Texas. *See* 28 U.S.C. § 1391.

### III.   FACTS

6. Defendant is a large law firm specializing in personal injury and social security disability claims.

7. Plaintiff's cell phone number has continuously been on the National Do Not Call Registry ("DNCR") since at least 2015. Plaintiff's cell phone is his primary, personal phone.

8. Defendant does not maintain written procedures to comply with the DNCR. Neither has it trained its employees, agents, or personnel on DNCR procedures. Nor has it maintained a recorded list of telephone numbers that it or its agents may not contact. Defendant does not utilize a process to prevent telephone solicitations to telephone numbers on the DNCR. Defendant did not obtain and maintain a version of the DNCR from the DNCR's administrator within thirty-one days of the calls at issue here.

9. Defendant does not have a registration certificate allowing it to conduct telephone solicitations in Texas. *See* TEX. BUS. & COM. CODE § 302.101.

10. On May 31, 2023, Plaintiff received a call on his cell phone from (213) 672-1149. Upon answering, there was a long pause followed by a click, indicating use of an automatic telephone dialing system ("ATDS"). A prerecorded voice said "Hi! I'm Elizabeth from Senior Aid Benefits and you can press 1 to be added to the do not call list. How are you doing today?" Plaintiff pressed 1 and the call was automatically disconnected.

11. On May 31, 2023, Plaintiff received another call from (213) 672-1149. Another long pause and click. "Hi! I'm Elizabeth from Senior Aid Benefits and you can press 1 to be added to the do not call list. How are you doing today?" Plaintiff pressed 1 and the call was automatically disconnected.

12. On June 2, 2023, Plaintiff received a call from (530) 405-1140. Long pause. Click. "Hi! I'm Elizabeth from Senior Aid Benefits and you can press 1 to be added to the do not call list. How are you doing today?" Plaintiff pressed 1 and the call was automatically disconnected.

13. On June 5, 2023, Plaintiff received a call from (810) 788-8868. Long pause. Click. "Hi! I'm Elizabeth from Senior Aid Benefits and you can press 1 to be added to the do not call list." Plaintiff pressed 1 and the call was automatically disconnected.

14. On June 6, 2023, Plaintiff received a call from (615) 288-6492. Long pause. Click. "Hi! I'm Elizabeth from Senior Aid Benefits and you can press 1 to be added to the do not call list." Plaintiff pressed 1 and the call was automatically disconnected.

15. On June 8, 2023, Plaintiff received a call from (530) 291-4677. Long pause and click. "Hi! I'm Elizabeth from Senior Aid Benefits and you can press 1 to be added to the do not call list." Plaintiff pressed 1 and the call was automatically disconnected.

16. On June 14, 2023, Plaintiff received a call from (725) 255-4784. . . . "Hi! I'm Elizabeth from Senior Aid Benefits and you can press 1 to be added to the do not call list. How are you doing today?" Plaintiff, exasperated by Defendant's incessant harassment, without ratifying the telemarketing violations, and with the sole intention of determining who was behind the calls, attempted to answer the prerecorded voice and get through to a live agent. After Plaintiff answered the first question ("How are you doing today?"), the prerecorded voice asked him several screening questions, such as his age, employment status, and whether he was disabled. Apparently, one of Plaintiff's answers disqualified him for Defendant's services and the call was automatically disconnected.

17. On June 14, 2023, Plaintiff received a call from (785) 264-8154. . . . "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Plaintiff tried a different combination of answers. Again, he was disqualified and the call disconnected automatically.

18. On June 14, 2023, Plaintiff received a call from (530) 240-2880. "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Plaintiff tried a new combination of answers. Same result.

19. On June 14, 2023, Plaintiff received a call from (801) 701-7645. "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Plaintiff tried another combination of answers. Call disconnected.

20. On June 14, 2023, Plaintiff received a call from (540) 203-2804. "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Plaintiff tried a new combination of answers. Same result.

21. On June 16, 2023, Plaintiff received a call from (530) 287-9077. "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Plaintiff tried another combination. Again disqualified.

22. On June 16, 2023, Plaintiff received a call from (530) 287-0918. "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Plaintiff tried a new combination. Same result.

23. On June 17, 2023, Plaintiff received a call from (551) 213-9572. "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Plaintiff tried another combination. Call disconnected.

24. On June 18, 2023, Plaintiff received a call from (574) 739-9729. "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Plaintiff tried again to get through to someone, answered incorrectly, and was disconnected.

25. On June 18, 2023, Plaintiff received a call from (530) 287-9053. "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Another combination. Another disqualification. Another disconnection.

26. On June 19, 2023, Plaintiff received a call from (308) 223-4938. "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Another combination. Another disqualification. Another disconnection.

27. On June 26, 2023, Plaintiff received a call from (346) 501-2357. "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Another combination, disqualification, and disconnection.

28. On July 1, 2023, Plaintiff received a call from (701) 414-6056. "Hi! I'm Elizabeth from Senior Aid Benefits . . ." Another combination, disqualification, and disconnection.

29. On July 1, 2023, Plaintiff received a call from (715) 248-5120 at 9:46 a.m. "Hello?" Silence. Click. "Hi! I'm Elizabeth from Senior Aid Benefits and you can press 1 to be added to the do not call list. How are you doing today?" Plaintiff answered the same series of questions, again trying different answers to avoid being disconnected. Plaintiff answered all questions correctly, at the conclusion of which the recorded voice said "Great! You qualify for social security disability benefits. Let me transfer you to someone who can help you complete your application." Plaintiff had not asked to apply for social security disability benefits.

30. After a long pause, a live representative came on the line. He told Plaintiff his name was Brad. Brad asked Plaintiff all the same questions again. After Plaintiff answered all the questions satisfactorily, Brad told Plaintiff he qualified for social security disability payments. Then: "what we do here at Kirkendall Dwyer is help people file social security disability claims." He told Plaintiff he would then be sending a text message with a link to a contract offer for Plaintiff's consideration.

31. A moment later, at 10:05 a.m., while still on the phone with Brad, Plaintiff received a text message from arodriguez@kirkendalldwyer.com, which included a website link to view and sign a boilerplate contract for legal services. That contract is attached below. *See* Exhibit 1.

32. Even if merely an agent of Defendant and not directly employed by it, Brad's ability to instantaneously pass along a contract offer from Defendant shows that Defendant approved of its services being telemarketed.

33. Brad then gave Plaintiff the number for the organization he represented: (877) 214-4407. That number belongs to Kirkendall Dwyer LLP and is the "Client Specialist" number listed on the boilerplate contract. As soon as Plaintiff obtained the caller's name, number, and organization and documentary evidence confirming the entity behind the calls, he hung up.

34. Minutes later, Plaintiff received another text message from arodriguez@kirkendalldwyer.com with another link to a contract for legal services.

35. The next day—Sunday, July 2, 2023, a holiday weekend—Plaintiff received a call from (214) 271-4027. A woman told him she was calling from Kirkendall Dwyer LLP, following up about services for social security disability claims. Plaintiff told her he was uninterested.

36. The same day, Plaintiff received a call from (469) 784-9983. Another woman again said she was following up from Kirkendall Dwyer LLP. Plaintiff again told her he was uninterested.

37. On July 4, 2023, Plaintiff received yet another text message from arodriguez@kirkendalldwyer.com with a link to the same contract for legal services.

38. On July 13, 2023, Plaintiff twice received text messages from arodriguez@kirkendalldwyer.com with links to the same contract for legal services.

39. On July 14, 2023, Plaintiff received another text message from arodriguez@kirkendalldwyer.com with a link to a contract for legal services.

40. On July 15, 2023, Plaintiff received another text message from arodriguez@kirkendalldwyer.com with a link to a contract for legal services.

41. Plaintiff does not have a business relationship with Defendant.

42. Plaintiff has never provided Defendant with consent or written invitation to contact him on his cell phone via text message or phone call.

43. Plaintiff told Defendant multiple times to remove him from any internal call lists and to stop calling him.

44. Nonetheless, Defendant called Plaintiff at least twenty times in a five-week period.

45. Defendant's incessant follow up calls and repeated solicitous text messages, many of which occurred during a holiday weekend, show Defendant is practiced and comfortable with aggressively telemarketing its services, even if it means harassing those it calls.

46. Defendant uses the misnomer "Senior Aid Benefits" as well as numerous prerecorded qualifying questions to skirt liability under the TCPA by obscuring its identity from everyone to whom it solicits services except only those who qualify. Therefore, as Defendant sees it, only elderly, disabled people will ever determine that Defendant was behind its telemarking calls. Defendant calculates that, as a class, such individuals are highly unlikely to hold it accountable under a modern, little-known statute.

47. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with Defendant's full authorization, ratification, or approval, or was done in the routine normal course and scope of employment of Defendant's officers, directors, vice-principals, agents, servants, or employees.

48. If Defendant's agents—as opposed to employees—placed the telemarketing calls at issue here, Defendant was nevertheless closely involved in the telemarketing campaign. Defendant provided its agents with qualification standards for prospective client. It provided or approved

the scripts its agents used during the telemarketing campaign. It informed its agents of target volumes for client intakes. And it authorized its agents to pass along boilerplate contracts to prospective clients during telemarketing calls.

49. Plaintiff, a busy professional, has been angered, frustrated, and harassed by Defendant's incessant telemarketing. Defendant's actions have consumed a great of Plaintiff's time, attention, and resources, measured both in time wasted on the phone with Defendant's prerecorded and live telemarketers as well as efforts spent attempting to vindicate his rights through the instant action.

### IV.    FIRST CAUSE OF ACTION: TCPA

50. All preceding factual allegations are incorporated herein.

51. The TCPA provides a private right of action for any person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" promulgated under the statute. 47 U.S.C. § 227(c)(5). *See* 47 C.F.R. § 64.1200.

52. Regulations promulgated under the TCPA prohibit any person or entity from initiating "any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). A cell phone, if used primarily for personal matters, is a residential telephone line. *See Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *2 (N.D. Tex. Feb. 24, 2022).

53. TCPA regulations prohibit a person from initiating or causing to be initiated any telemarketing calls "using an automatic telephone dialing system or an artificial or prerecorded voice" to any

cellular telephone number without "the prior express written consent of the called party." 47 C.F.R. § 64.1200(a)(2).

54. Additionally, they prohibit initiating any telephone call, telemarketing or otherwise, "to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party," unless for specific exceptions not at issue here. *See* 47 C.F.R. § 64.1200(a)(3).

55. Finally, TCPA regulations prohibit an entity from initiating telemarketing calls without previously "institut[ing] procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity," which include: a written policy for maintaining a do-not-call list; do-not-call list training for personnel engaged in telemarketing; and a recording of requests to be placed on the entity's do-not-call list. 47 C.F.R. § 64.1200(d).

## V.   SECOND CAUSE OF ACTION: TEXAS BUSINESS AND COMMERCE CODE § 305.053

56. All preceding factual allegations are incorporated herein.

57. Under Texas Business and Commerce Code, section 305.053, "[a] person who received a communication that violates 47 U.S.C. Section 227 [or] a regulation adopted under that provision . . . may bring an action in this state against the person who originates the communication for . . . damages in the amount provided by this section." TEX. BUS. § COM. CODE § 305.053.

58. Because Defendant violated the TCPA and its regulations, it likewise violated Texas Business and Commerce Code, section 305.053.

## VI.   THIRD CAUSE OF ACTION: TEXAS BUSINESS AND COMMERCE CODE § 302.101

59. All preceding factual allegations are incorporated herein.

60. Under Texas Business and Commerce Code, section 302.101, "[a] seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." TEX. BUS. § COM. CODE § 302.101.

61. A private right of action may be used to enforce Chapter 302. TEX. BUS. § COM. CODE § 302.303.

## VII.   RELIEF

Plaintiff seeks the following relief:

62. An award of $1,500 in statutory damages for each of Defendant's willful and knowing TCPA violations alleged herein, or an award of $500 in statutory damages for each of Defendant's TCPA violations, *see* 47 U.S.C. § 227(b)(3);

63. An award of $1,500 in statutory damages for each of Defendant's knowing and intentional violations of the TCPA alleged herein, *see* TEX. BUS. § COM. CODE § 305.053(c);

64. An award of $5,000 for each of Defendant's violations of section 302.101 of the Texas Business and Commerce Code, *see* TEX. BUS. § COM. CODE § 302.302(a);

65. Pre-judgment and post-judgment interest;

66. An award of court costs; and

67. All other relief that the Court deems necessary, just, and proper.

Date: 23 July 2023

Blake Hyde
Plaintiff, *pro se*
blake.campbell.hyde@gmail.com
(530) 383-6810
609 Blacker Ave.
El Paso, Texas 79902